**Michael T. MINOTTI, Plaintiff-Appellee,**

**v.**

**Brian LENSINK, Commissioner of the Connecticut Department of Mental Retardation, Defendant-Appellant.**

No. 86–7253.

No. 1434—August Term, 1985

United States Court of Appeals, Second Circuit.

Argued June 9, 1986.

Decided Aug. 19, 1986.

Jane S. Scholl, Asst. Atty. Gen., Hartford, Conn. (Joseph I. Lieberman, Atty. Gen., Robert W. Garvey, Asst. Atty. Gen., of counsel), for defendant-appellant.

Michael T. Minotti, Storrs, Conn., pro se, for plaintiff-appellee.

Before WINTER and PRATT, Circuit Judges, and MALETZ,[*] Senior Judge.

MALETZ, Senior Judge:

In August 1983, Michael T. Minotti was appointed to a position with a Connecticut facility for the mentally retarded. He brought an action for damages under 42 U.S.C. § 1983 (1982) in the United States District Court for the District of Connecticut, alleging that employees of the state's Department of Mental Retardation (the Department) wrongfully attempted to involve him in a conspiracy to defraud the United States and, when he refused to cooperate, conspired to terminate his employment. The sole defendant, Amy Wheaton, who was sued in her official capacity as Acting Commissioner of the Department, moved to dismiss on the basis of, among other things, a claim of immunity under the eleventh amendment to the Constitution. Holding that Connecticut had waived its immunity, Judge Dorsey denied the motion to dismiss. Wheaton's successor as Commissioner, Brian Lensink, appeals denial of that motion. For the reasons that follow, we reverse the determination of the district court and remand with direction that the action be dismissed.

claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."

■ In this connection, the Supreme Court has held that denial of a substantial claim of absolute immunity may be appealed before final judgment. *Nixon v. Fitzgerald*, 457 U.S. 731, 743, 102 S.Ct. 2690, 2697, 73 L.Ed.2d 349 (1982). More recently, the Court has applied the collateral order doctrine to "denial of a claim of qualified immunity to the extent that it turns on a question of law." *Mitchell v. Forsyth*, — U.S. —, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). In the case of an absolute immunity such as that provided by the eleventh amendment, the essence of the immunity is the possessor's right not to be haled into court—a right that cannot be vindicated after trial. *Id.* at 2815; *see Harris v. Deveaux*, 780 F.2d 911, 913 (11th Cir.1986) ("Absolute immunity is meant to protect not only from liability, but from going to trial at all."). Thus, Judge Dorsey's denial of the motion to dismiss is a final decision that may be appealed under 28 U.S.C. § 1291.

## I

■ Ordinarily, an appeal from denial of a motion to dismiss would be barred by the statutory requirement that the order appealed from be final. *See* 28 U.S.C. § 1291 (1982). However, under the "collateral order" doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949), interlocutory appeals may be taken from district court decisions that "finally determine

## II

The eleventh amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Although eleventh amendment jurisprudence has not developed without controversy—in the Supreme Court[1] and

---

[*] The Honorable Herbert N. Maletz, of the United States Court of International Trade, sitting by designation.

**1.** *See, e.g., Atascadero State Hospital v. Scanlon*, — U.S. —, 105 S.Ct. 3142, 3156, 87 L.Ed.2d 171 (1985) (Brennan, J., dissenting) (recent expansion of eleventh amendment doctrine

has been shown by research to rest on mistaken historical premise); *Florida Department of Health & Rehabilitative Services v. Florida Nursing Home Association*, 450 U.S. 147, 155, 101 S.Ct. 1032, 1037, 67 L.Ed.2d 132 (1981) (Stevens, J., concurring) ("adherence to questionable precedent preferable to unravelling of *stare decisis*").

elsewhere [2]—some general principles are now firmly established:

(1) "[A]n unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974); *see, e.g., Atascadero State Hospital v. Scanlon,* —— U.S. ——, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985); *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed.2d 842 (1980).

(2) "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945); *see Scheuer v. Rhodes,* 416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974); *Edelman,* 415 U.S. at 663, 94 S.Ct at 1355; *cf. Dwyer v. Regan,* 777 F.2d 825, 836 (2d Cir.1985) (eleventh amendment does not bar award of damages from official's personal funds rather than state treasury), *modified on other grounds,* 793 F.2d 457 (2d Cir.1986).

(3) Therefore, the eleventh amendment immunity protects state officials sued for damages in their official capacity. *Kentucky v. Graham,* —— U.S. ——, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985).

(4) A state may waive its eleventh amendment immunity, *Atascadero,* 105 S.Ct. at 3145; *Clark v. Barnard,* 108 U.S. 436, 447, 2 S.Ct. 878, 882–83, 27 L.Ed. 780 (1883), so long as the waiver is unequivocally expressed, *Atascadero,* 105 S.Ct. at 3146; *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984); *Florida Department of Health & Rehabilitative Services v. Florida Nursing Home Associ-*

*ation,* 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981) (per curiam); *Edelman,* 415 U.S. at 673, 94 S.Ct. at 1360–61.

(5) Using its authority under section 5 of the fourteenth amendment, Congress may abrogate the eleventh amendment in the absence of a waiver by the states, *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976), but the civil rights statute 42 U.S.C. § 1983 does not override the eleventh amendment, *Pennhurst,* 465 U.S. at 99, 104 S.Ct. at 907; *Quern v. Jordan,* 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979); *Edelman,* 415 U.S. at 675–77, 94 S.Ct. at 1361–63.

(6) The amendment does not prevent federal courts from granting prospective injunctive relief against state officials on the basis of federal claims. *Ex Parte Young,* 209 U.S. 123, 156, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908); *accord Green v. Mansour,* —— U.S. ——, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985).

(7) Additionally, a state officer loses the protection of the amendment if he acts ultra vires, i.e., without any authority whatever. *See Pennhurst,* 465 U.S. at 101 n. 11, 104 S.Ct. at 908 n. 11; *Florida Department of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 696–97, 102 S.Ct. 3304, 3320–21, 73 L.Ed.2d 1057 (1982) (plurality opinion); *id.* at 716, 102 S.Ct. at 3330 (White, J., concurring in the judgment in part and dissenting in part).

Principles (6) and (7) have no bearing on this appeal. In light of the first five principles, however, it is clear that Minotti's section 1983 action comes within the ambit of the eleventh amendment. He sued Amy Wheaton in her official capacity as Acting Commissioner of the Department. On May 6, 1985, Wheaton was succeeded by Brian

---

**2.** *See, e.g.,* Field, *The Eleventh Amendment and Other Sovereign Immunity Doctrines: Part One,* 126 U.Pa.L.Rev. 515 (1977); Field, *The Eleventh Amendment and Other Sovereign Immunity Doctrines: Congressional Imposition of Suit upon the States,* 126 U.Pa.L.Rev. 1203 (1978); Fletcher, *A Historical Interpretation of the Eleventh*

*Amendment: A Narrow Construction of an Affirmative Grant of Jurisdiction Rather than a Prohibition Against Jurisdiction,* 35 Stan.L.Rev. 1033 (1983); Shapiro, *Wrong Turns: The Eleventh Amendment and the Pennhurst Case,* 98 Harv.L.Rev. 61 (1984).

Lensink; two days later, Minotti moved to substitute him as named defendant, pursuant to rule 25(d)(1) of the Federal Rules of Civil Procedure, which deals with the departure from office of a public officer who is a party to an action in his official capacity.

Thus, although Minotti was a pro se litigant, the record shows that he was aware of the distinction between official and individual capacity, and he chose to proceed against the Commissioner of the Department in her (later his) official capacity. This was not a surprising choice, because it enabled Minotti to collect potential damages from the relatively vast resources of the state. But it also made the action "in essence one for the recovery of money from the state," *Ford Motor Co.*, 323 U.S. at 464, 65 S.Ct. at 350, and brought the eleventh amendment into play. The central question on appeal, then, is whether Connecticut has waived its eleventh amendment immunity.

### III

Whether Connecticut has waived its immunity *vel non* depends upon construction of the following statute:

> Any civil action for damages on account of any official act or omission of the ... commissioner of mental retardation or any member of [his] staff[ ] ... shall be brought against the commissioner[ ] in [his] official capacit[y] and said commissioner[ ] shall be represented therein by the attorney general.... Damages recovered in such action shall be a proper charge against the general fund of the state....

Conn.Gen.Stat.Ann. § 19a–24(a) (West 1986).

■ Three years ago, in a case of first impression, *Duguay v. Hopkins*, 191 Conn. 222, 227, 464 A.2d 45, 49 (1983), the Supreme Court of Connecticut construed section 19a–24 as "waiv[ing] sovereign immunity in the civil actions specified," *id.* at 229, 464 A.2d at 50. *Duguay*'s reading of legislative intent is controlling, because "legislative intent is a matter of state law, on which the highest court of a state speaks with finality." *Della Grotta v. Rhode Island*, 781 F.2d 343, 347 (1st Cir. 1986) (citing *Mullaney v. Wilbur*, 421 U.S. 684, 690–91, 95 S.Ct. 1881, 1885–86, 44 L.Ed.2d 508 (1975)). Therefore, if *Duguay* construes section 19a–24 as waiving Connecticut's immunity to suit in *federal* court, "the state's intent is just as clear as if the waiver were made explicit in the ... statute." *Della Grotta*, 781 F.2d at 347.

■ Therein lies the rub, because we may find no waiver unless the state has spoken in the " 'most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.' " *Edelman*, 415 U.S. at 673, 94 S.Ct. at 1361 (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)). And, since "[a] State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued," *Pennhurst*, 465 U.S. at 99, 104 S.Ct. at 907 (emphasis in original) (footnote omitted), there will be no waiver of immunity against federal suit unless the state specifies its intention to consent to suit in federal court, *Atascadero*, 105 S.Ct. at 3147.

In *Atascadero*, the Court found that California had not waived its eleventh amendment immunity to federal suit, notwithstanding article III, section 5 of the state constitution, which provided: "Suits may be brought against the State in such manner and in such courts as shall be directed by law." The Court noted the "absence of an unequivocal waiver *specifically applicable to federal court jurisdiction.*" *Atascadero*, 105 S.Ct. at 3147 (emphasis added).

In *Della Grotta v. Rhode Island*, 781 F.2d 343 (1st Cir.1986), the First Circuit was called upon to construe the following Rhode Island statute:

> The state of Rhode Island ... shall, subject to the period of limitations set forth in § 9–1–25, hereby be liable in *all actions of tort* in the same manner as a

private individual or corporation, provided however, that any recovery in such action shall not exceed the monetary limitations set forth in the chapter.

*Id.* at 346 (quoting section 1 of R.I.Gen. Laws § 9–31–1 (1985)) (emphasis added). Although the statute purported to waive immunity in *all* tort actions, the court concluded that the statutory language was insufficient to constitute a waiver of immunity to suit in federal court under the *Edelman/Atascadero* test. *Id.* However, the court did find such a waiver on the basis of a construction of the statute by the state's highest court. *Id.* at 346–47.[3] *Cf. Skehan v. Board of Trustees of Bloomsburg State College,* 669 F.2d 142, 147–49 (3d Cir.) (no waiver of eleventh amendment immunity where state court abrogated common law sovereign immunity but did not address constitutional immunity from suit in federal court), *cert. denied,* 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982).

■ It cannot be disputed that the Connecticut statute before us, section 19a–24, does not, standing alone, satisfy the *Edelman/Atascadero* test. The statute speaks generally of "[a]ny civil action," but does not "specify the State's intention to subject itself to suit in *federal court.*" *Atascadero,* 105 S.Ct. at 3147 (emphasis in original). As in *Della Grotta,* our inquiry is not at an end, because the silence of the legislature may be rectified by the voice of the state's highest court. But the Supreme Court of Connecticut, in *Duguay,* decided only that the state had waived sovereign immunity "in the civil actions specified." 191 Conn. at 229, 464 A.2d at 50. It discussed what types of suit could be brought rather than stating *where* they may be brought, let alone indicating that the statute constituted a waiver of immunity to suit in federal court. Thus, section 19a–24, even when construed in light of *Duguay,* does not provide the requisite waiver of immunity.

## IV

To summarize, in view of controlling Supreme Court precedent and the failure of section 19a–24 as construed by *Duguay* explicitly to waive immunity to suit in federal court, we reverse the determination of the district court and remand with direction that the action be dismissed.

---

**3.** *Della Grotta* relied on *Laird v. Chrysler Corp.,* 460 A.2d 425, 427 (R.I.1983), in which the Supreme Court of Rhode Island answered *affirmatively* the following question certified to it by the United States District Court for the District of Massachusetts: "Whether the waiver of sovereign immunity with respect to tort claims, as found in Rhode Island General Laws, Section 9–31–1 applies to tort actions brought in a federal court?"