**Hope LEE–THOMAS, Plaintiff–Appellee,**

v.

**PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS, Defendant–Appellant.**

No. 10–1699.

United States Court of Appeals, Fourth Circuit.

Argued: Sept. 20, 2011.

Decided: Jan. 11, 2012.

246

**ARGUED:** Abbey G. Hairston, Thatcher Law Firm, Greenbelt, Maryland; Leslie Robert Stellman, Hodes, Pessin & Katz, PA, Towson, Maryland, for Appellant. Lorrianne Jeanette Rice, Bowie, Maryland, for Appellee. **ON BRIEF:** Linda H. Thatcher, Robert J. Baror, Thatcher Law Firm, Greenbelt, Maryland, for Appellant.

Before KING, DAVIS, and KEENAN, Circuit Judges.

Affirmed by published opinion. Judge KING wrote the majority opinion, in which Judge DAVIS joined. Judge KEENAN wrote a dissenting opinion.

## OPINION

KING, Circuit Judge:

Defendant-appellant Prince George's County Public Schools (the school "Board") appeals from the district court's partial rejection of the Board's assertion of immunity under the Eleventh Amendment. Although it recognized that the Board enjoys some measure of Eleventh Amendment immunity, the court ruled that the State of Maryland has waived such immunity for damage claims of $100,000 or less. *See Lee–Thomas v. Bd. of Educ. of Prince George's Cnty.*, No. 8:08–cv–03327 (D.Md. Feb. 5, 2010) (the "Opinion").[1] As explained below, we agree with the district court and affirm.

I.

On December 11, 2008, plaintiff-appellee Hope Lee–Thomas, a Board employee, ini-

---

1. The Opinion is found at J.A. 60–64. (Citations herein to "J.A. ——" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

tiated this proceeding in the District of Maryland, alleging that the Board violated the Americans with Disabilities Act (the "ADA") by failing to reasonably accommodate her hearing disability. Lee–Thomas's complaint sought back pay, future pay, compensatory damages of $1,000,000, punitive damages of $1,000,000, plus attorney's fees and costs. In October 2009, following discovery, the Board moved for summary judgment, primarily on the contention that the Eleventh Amendment barred an ADA suit against the Board for damages. In acquiescence to the Board's contentions that back pay, future pay, and punitive damages are not recoverable under the ADA, Lee–Thomas moved separately to amend her complaint to jettison those requests for relief. She also sought to reduce her request for compensatory damages from $1,000,000 to $100,000, and to add a request for injunctive relief. Otherwise, Lee–Thomas opposed the Board's claim of Eleventh Amendment immunity.

■ On February 5, 2010, the district court issued its Opinion, granting the Board's summary judgment motion only insofar as Lee–Thomas's damage claim exceeded $100,000.[2] In so doing, the Opinion adhered to the precedent of the Court of Appeals of Maryland, the highest court of the State. In 2009, that court concluded that the enactment of a state statute, see Md.Code Ann., Cts. & Jud. Proc. § 5–518(c) (the "immunity provision"), effectuated a waiver of a county board of education's Eleventh Amendment immunity "for all claims in the amount of $100,000 or less." *Bd. of Educ. of Balt. Cnty. v. Zimmer–Rubert*, 409 Md. 200, 973 A.2d 233, 243 (2009).[3] The Opinion also granted Lee–Thomas's motion to amend her complaint. On March 1, 2010, the Board moved for reconsideration of the Opinion, which the court denied on June 8, 2010. On June 22, 2010, the Board filed its notice of appeal.[4] We possess jurisdiction under the collateral order doctrine to review a denial of Eleventh Amendment immunity, in that such a ruling is deemed a final decision under 28 U.S.C. § 1291. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144–47, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).

## II.

■ We ordinarily review for abuse of discretion a district court's denial of a motion for reconsideration. *See Cray Comm'ns, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 395 (4th Cir.1994). We review de novo, however, a district court's denial of Eleventh Amendment immunity. *See Harter v. Vernon*, 101 F.3d 334, 336 (4th Cir.1996). Because the district court's refusal to reconsider the Opinion was based on its determination that the

---

2. The parties consented in the district court to the jurisdiction of a magistrate judge for all purposes. In issuing his decisions, the magistrate judge was acting for the court, and we therefore refer to those decisions as those of the district court. *See* 28 U.S.C. § 636(c)(1).

3. The immunity provision provides that "[a] county board of education may not raise the defense of sovereign immunity to any claim of $100,000 or less." Concomitantly, Maryland county boards of education are required to carry comprehensive liability insurance with a minimum coverage of $100,000. *See* Md. Code Ann., Ed. § 4–105(a)–(b).

4. We are satisfied that the Board's motion for reconsideration should be treated as a motion to alter or amend a judgment under Rule 59(e) of the Federal Rules of Civil Procedure, in that it was filed within twenty-eight days of the judgment. *See Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 n. 4 (4th Cir. 2011) (construing post-judgment motion for reconsideration as Rule 59(e) motion). As a result, the Board's notice of appeal was timely filed. *See* Fed. R.App. P. 4(a)(4)(A).

Board was not entitled to Eleventh Amendment immunity, we consider the underlying question anew, without deference to the court's ruling on reconsideration. *See Beentjes v. Placer Cnty. Air Pollution Control Dist.*, 397 F.3d 775, 777 (9th Cir. 2005).

## III.

The Board contends that the district court erred in deferring to the decision of the Court of Appeals of Maryland in *Board of Education of Baltimore County v. Zimmer–Rubert*, 409 Md. 200, 973 A.2d 233 (2009), on the question of whether the immunity provision waived the State's Eleventh Amendment immunity. The Board posits that no such deference is owed because the question is one of federal law, on which the decisions of the Supreme Court of the United States are controlling. More specifically, the Board relies on Supreme Court precedent recognizing a statutory waiver of Eleventh Amendment immunity only where the relevant state statute utilizes express language of consent to suit in federal court. The Board maintains that the words "any claim" in the immunity provision are insufficient to constitute an express waiver under federal law, contrary to the conclusion reached by Maryland's highest court in *Zimmer–Rubert.*

We begin our analysis with the threshold issue of whether federal law or state law controls the question of a state's statutory waiver of Eleventh Amendment immunity. Guided by the precepts of Eleventh Amendment jurisprudence, we conclude that, although the federal courts must apply federal law as embodied in Supreme Court precedent, when a state's highest court has applied federal law and determined that a state statute effects a waiver of Eleventh Amendment immunity, the federal courts must accord deference to that state court decision. Applying these principles to this case, the district court properly deferred to the decision of the Court of Appeals of Maryland in *Zimmer–Rubert.*

## A.

 Pursuant to the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. The Supreme Court "has drawn on principles of sovereign immunity to construe the Amendment to establish that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Port Auth. Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 304, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990) (internal quotation marks omitted). The States' immunity also extends to "state agents and state instrumentalities." *Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997).[5] "The Elev-

---

5. Lee–Thomas has conceded that the Board is an agent of the State of Maryland. *See* J.A. 51. The district court apparently accepted, without deciding, that the Board is a state agency. On appeal, the Board reassures us that a number of federal and state court decisions have concluded that Maryland boards of education are state agencies for Eleventh Amendment immunity purposes. Where, as here, the judgment would not be paid from the State's treasury, we must consider whether the relationship between the State and a board of education is "sufficiently close to make the entity an arm of the State" by analyzing:

(1) the degree of control that the State exercises over the entity or the degree of autonomy from the State that the entity enjoys;

enth Amendment bar to suit is not absolute," however. *Feeney*, 495 U.S. at 304, 110 S.Ct. 1868. There are three exceptions to that constitutional bar.

■ First, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) (internal quotation marks and alterations omitted). The applicability of the first exception is not a point of contention in this appeal because Congress did not abrogate the States' immunity from money damage claims under Title I of the ADA. *See id.* at 374, 121 S.Ct. 955.[6] Second, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004). The second exception is also inapplicable here, because the complaint does not name as defendants any officials of the State of Maryland. Third, "[a] State remains free to waive its Eleventh Amendment immunity from suit in a federal court." *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002). The third exception, that of waiver, is at issue in this proceeding. The Board maintains that the waiver exception is inapplicable because Supreme Court precedent compels the conclusion that the State of Maryland has not forgone its Eleventh Amendment immunity.

■ The Board acknowledges that the Supreme Court long ago decided that the question of waiver of sovereign immunity by a state constitutional provision or statute is a matter of state law, "as to which the decision of the [state's highest court] is controlling." *Palmer v. Ohio*, 248 U.S. 32, 34, 39 S.Ct. 16, 63 L.Ed. 108 (1918). The Board contends, nevertheless, that the Court effectively overruled *Palmer* in its unanimous 2002 *Lapides* decision, by virtue of the following statement:

> As in analogous contexts, in which matters are questions of federal law, *cf., e.g., Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429, n. 5 [117 S.Ct. 900, 137 L.Ed.2d 55] (1997), whether a particular set of state laws, rules, or activities amounts to a waiver of the State's Eleventh Amendment immunity is a question of federal law.

535 U.S. at 622–23, 122 S.Ct. 1640.

In *Lapides*—initiated as a state court action alleging state law claims against Georgia's Board of Regents—the plaintiff sought to avail himself of a statutory waiver of Georgia's immunity from suit in the courts of that State. Georgia's Attorney General joined in the removal of the state proceeding to federal court, however, and

---

(2) the scope of the entity's concerns—whether local or statewide—with which the entity is involved; and (3) the manner in which State law treats the entity.

*Cash v. Granville Cnty. Bd. of Educ.*, 242 F.3d 219, 224 (4th Cir.2001). We agree with the courts that have evaluated the foregoing factors and concluded that the State exercises a significant degree of control over boards of education and that Maryland law treats them as instrumentalities of the State. *See, e.g., Lewis v. Bd. of Educ. of Talbot Cnty.*, 262 F.Supp.2d 608, 613–14 (D.Md.2003); *Zim-*

*mer–Rubert*, 973 A.2d at 236–37 (collecting cases). As a result, for purposes of this proceeding, the Board is an agent of the State entitled to invoke its claim of Eleventh Amendment immunity.

**6.** Title I of the ADA, as codified at 42 U.S.C. § 12112, proscribes the type of discriminatory acts and omissions alleged by Lee–Thomas, i.e., the failure of an employer to make reasonable accommodations. *See E.E.O.C. v. Fed. Express Corp.*, 513 F.3d 360, 371 (4th Cir.2008).

then sought dismissal of the claims on Eleventh Amendment grounds. The question the Supreme Court "agreed to decide [was] whether a state waives its Eleventh Amendment immunity by its affirmative litigation conduct when it removes a case to federal court." *Lapides*, 535 U.S. at 617, 122 S.Ct. 1640 (internal quotation marks and alteration omitted). Limiting its holding to state law claims that the State had already consented to defend in its own courts, the Court ruled that Georgia's act of removal constituted a waiver of its Eleventh Amendment immunity. *Id.* at 624, 122 S.Ct. 1640. The Court reasoned that it would "seem anomalous or inconsistent" for a state to invoke federal jurisdiction by removal and then assert immunity from such jurisdiction. *Id.* at 619, 122 S.Ct. 1640.

Although Georgia maintained that its Attorney General was not authorized, as a matter of state law, to waive the State's Eleventh Amendment immunity, the Court deemed the lack of such authority immaterial. Rather, the Court stressed that the State had voluntarily invoked federal jurisdiction, and, more fundamentally, that waiver of such immunity by affirmative litigation conduct is a question of federal law. *Lapides*, 535 U.S. at 622–23, 122 S.Ct. 1640. As the Court explained,

> an interpretation of the Eleventh Amendment that finds waiver in the litigation context rests upon the Amendment's presumed recognition of the judicial need to avoid inconsistency, anomaly, and unfairness, and not upon a State's actual preference or desire, which might, after all, favor selective use of "immunity" to achieve litigation advantages.

*Id.* at 620, 122 S.Ct. 1640.

 In this appeal, the Board erroneously conflates a state statutory waiver of Eleventh Amendment immunity with a litigation conduct waiver, whereas the *Lapides* decision carefully distinguished between them. *See* 535 U.S. at 620, 122 S.Ct. 1640 (differentiating waiver requiring " 'clear' indication of the State's intent to waive its immunity" from "waiver[ ] effected by litigation conduct"). Therefore, we are unable to fairly read the single statement in *Lapides*—on which the Board's appellate position relies—as having implicitly and effectively overruled *Palmer*. It is, of course, solely the prerogative of the Supreme Court to decide when to overrule one of its decisions, *see Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989), and we cannot "conclude [that the Court's] more recent cases have, by implication, overruled an earlier precedent," *see Agostini v. Felton*, 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997).

 It is not lost on us, of course, that it has been nearly a century since the Supreme Court decided *Palmer*. Meanwhile, the Court has developed a more complete body of law concerning Eleventh Amendment immunity waivers. That precedent must also be recognized and adhered to. Most relevant here, the Court has admonished the lower federal courts to identify a waiver of Eleventh Amendment immunity in a state statute "only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 240, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) (internal quotation marks and alteration omitted). And, because "a State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued … [the state statute] must specify the State's intention to subject itself to suit in *federal court*." *Id.*

at 241, 105 S.Ct. 3142 (citation and internal quotation marks omitted). As the Court emphasized, "[t]he test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *Id.* Hence, a state does not waive its Eleventh Amendment immunity "by consenting to suit in the courts of its own creation," "by stating its intention to 'sue and be sued,' or even by authorizing suits against it 'in any court of competent jurisdiction.'" *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 676, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999) (citations omitted).

 There is no question that, in assessing a purported statutory waiver of Eleventh Amendment immunity, a federal court must apply the "stringent test" enunciated by the Supreme Court's 1985 *Atascadero* decision, and, in the absence of a construction of the relevant state statute by the state's highest court, examine and decide the state law issue independently. *See Virginia v. Reinhard,* 568 F.3d 110, 114–17 (4th Cir.2009) (internal quotation marks omitted) (concluding that state statute was "not sufficiently explicit to waive Virginia's sovereign immunity"), *reversed on other grounds, Va. Office for Prot. & Advocacy v. Stewart,* —— U.S. ——, 131 S.Ct. 1632, 179 L.Ed.2d 675 (2011); *Huang v. Bd. of Governors of the Univ. of N.C.,* 902 F.2d 1134, 1138–39 (4th Cir.1990) (determining, after applying stringent test and reviewing state court decisions, that North Carolina statute did not waive Eleventh Amendment immunity in federal court); *see also Ford Motor Co. v. Dep't of*

*Treasury of Ind.,* 323 U.S. 459, 467, 65 S.Ct. 347, 89 L.Ed. 389 (1945) ("As this issue has not been determined by state courts, this Court must resort to the general policy of the state as expressed in its Constitution, statutes and decisions."), *overruled on other grounds, Lapides,* 535 U.S. at 623, 122 S.Ct. 1640.

 Nevertheless, where a state's highest court has applied the *Atascadero* stringent test and carefully scrutinized state law to determine whether a state statute effects a waiver of Eleventh Amendment immunity, a federal court is obliged, under *Palmer,* to defer to that state court decision. Indeed, we should defer to the decision of the state's highest court even when the statute, on its face, does not appear to pass the stringent test, because "[t]he whole point" of that test, "requiring a clear declaration *by the State* of its waiver[,] is to be certain that the State in fact consents to suit." *See Coll. Sav. Bank,* 527 U.S. at 680, 119 S.Ct. 2219 (internal quotation marks omitted). As the First Circuit has explained, "[w]here the highest court of a state has construed a state statute as intending to waive the state's immunity to suit in federal court, the state's intent is just as clear as if the waiver were made explicit in the state statute." *Della Grotta v. Rhode Island,* 781 F.2d 343, 347 (1st Cir.1986), *abrogated on other grounds by Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).[7] Put succinctly, "the silence of the legislature may be rectified by the voice of the state's highest court." *See Minotti v. Lensink,*

7. In the *Della Grotta* case, the state statute did not "spell out an intention to allow suit against [Rhode Island] in a federal court." *Della Grotta,* 781 F.2d at 346–47. The First Circuit nevertheless deferred to the Supreme Court of Rhode Island, which had ruled "unequivocally" that the state statute manifested an intent to waive Eleventh Amendment immunity in federal court. *Id.* at 347. The court reasoned, inter alia, that "when the highest court declares the intent of its own legislature, the federal courts have no reason to exercise special oversight designed to save the state from its own or (if distinguishable) its judicial folly." *Id.*

798 F.2d 607, 611 (2d Cir.1986) (declining to defer to the Supreme Court of Connecticut because it had not decided whether the relevant "statute constituted a waiver of immunity to suit in federal court").

 Moreover, the accumulated teachings of the Supreme Court's earlier and more recent precedents instruct that the strictures of federal law extolled in *Atascadero* must, in deference to state sovereignty, yield to the decision of a state's highest court. This command is applicable here because "the States' immunity from suit is a fundamental aspect of [their] sovereignty" that "neither derives from, nor is limited by, the terms of the Eleventh Amendment." *See Alden v. Maine,* 527 U.S. 706, 713, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). Consequently, a state's highest court is entitled to say what that state's law is on the question of consent to suit in federal court. *See Palmer,* 248 U.S. at 34, 39 S.Ct. 16; *see also Johnson v. Fankell,* 520 U.S. 911, 916, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997) ("Neither [the Supreme] Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State."); *Parden v. Terminal Ry. of Ala. State Docks Dep't,* 377 U.S. 184, 194–95, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964) ("[W]hether a State has waived its immunity depends upon its intention and is a question of state law only."), *overruled on other grounds, Coll. Sav. Bank,* 527 U.S. at 680, 119 S.Ct. 2219.[8]

## B.

 With the foregoing principles in mind, we turn to the scope of the Maryland immunity provision—the state statute at issue in this appeal. In its *Zimmer–Rubert* decision, Maryland's highest court considered and resolved the question of whether the immunity provision waives a county board of education's Eleventh Amendment immunity. There, a teacher had sued the Board of Education of Baltimore County (the "Baltimore Board") in

---

8. We are unable to disagree with our good dissenting colleague that, in assessing whether a state statute effects a waiver of Eleventh Amendment immunity, a court is obliged to apply federal law as embodied in Supreme Court precedent, e.g., *Atascadero.* We cannot endorse the dissent's view, however, that *Lapides*'s holding or its dicta authorizes a federal court to overrule the construction of a state statute rendered by that state's highest court. Such a view seems not only anomalous, as the dissent itself concedes, but is an affront to the very notion of state sovereignty. In our view, the dissent overemphasizes the distinction between "state court immunity" and "Eleventh Amendment immunity" in asserting that a state's highest court has no business deciding whether its own state statute constitutes consent to suit in federal court. *See post* at 255–56. In either forum, a state decides whether to waive its sovereign immunity. *See Alden,* 527 U.S. at 713–14, 119 S.Ct. 2240. A state acts no less in its sovereign capacity when its highest court interprets a state statute as when its legislature enacts one. *Cf. Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (the "law of the state" is the law "declared by its Legislature in a statute or by its highest court in a decision"). Thus, to say that a state's highest court has no right to speak authoritatively on its state's statutory waiver runs afoul of "the preeminent purpose of state sovereign immunity [which] is to accord States the dignity that is consistent with their status as sovereign entities." *See Fed. Maritime Comm'n v. S.C. State Ports Auth.,* 535 U.S. 743, 760, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002). Moreover, "[i]t would be a strange rule of federalism that ignores the view of the highest court of a State as to the meaning of its own law." *See Stringer v. Black,* 503 U.S. 222, 235, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992). That a state's highest court is the final arbiter of a state statute is a fundamental tenet of federalism older than *Palmer, see Elmendorf v. Taylor,* 23 U.S. 152, 159, 10 Wheat. 152, 6 L.Ed.

state court, alleging age discrimination under the Age Discrimination in Employment Act ("ADEA") and seeking to recover, inter alia, $100,000 in compensatory damages. *See Zimmer–Rubert*, 973 A.2d at 235. The Circuit Court for Baltimore County, where the suit was initiated, granted the Baltimore Board's motion to dismiss, ruling that the immunity provision did not specifically waive Eleventh Amendment immunity. *Id.* The Court of Special Appeals of Maryland reversed, however, concluding that the immunity provision waived the Baltimore Board's Eleventh Amendment immunity as to the plaintiff's ADEA claim. *Id.* at 236. The Court of Appeals of Maryland then granted certiorari. *Id.*

In affirming the Court of Special Appeals, the Court of Appeals analyzed the issue presented as requiring "a two-part determination": first, applying Maryland law to ascertain whether the immunity provision waived general sovereign immunity, and, second, whether it particularly waived Eleventh Amendment immunity, which the Court of Appeals recognized to involve "a question of federal constitutional law ... not limited to Maryland common law principles." *Zimmer–Rubert*, 973 A.2d at 240–41. The Court of Appeals deemed the "plain language" of the immunity provision to be a "broad and unambiguous" waiver of a general sovereign immunity defense. *Id.* at 242. The court also examined the legislative history of the immunity provision, observing that, as originally proposed, it would have required that "county school boards carry liability insurance 'for personal injury claims.'" *Id.* The

court further observed, however, "that [such] language was stricken in favor of language requiring '*comprehensive* liability insurance.'" *Id.* The legislature's revision, the Court of Appeals concluded, "confirms that the words 'any claim' in [the immunity provision] mean '*all* claims' ... including those for personal injury and alleged employment law violations." *Id.*

The Court of Appeals of Maryland then acknowledged and applied the *Atascadero* stringent test and concluded that the State had "specified its intention to subject itself to suit in federal court, as the words 'any claim' in [the immunity provision] encompass a claim brought in either state *or* federal court." *Zimmer–Rubert*, 973 A.2d at 242. The Court of Appeals contrasted the immunity provision with another Maryland statute barring a sovereign immunity defense "in a court *of* the State," which the court had previously held "excluded Eleventh Amendment immunity." *Id.* at 240, 242 (citing *State v. Sharafeldin*, 382 Md. 129, 854 A.2d 1208 (2004)). The court thus reasoned that, "if the General Assembly intended to preserve the State's Eleventh Amendment protection, that body knew how to do so by merely limiting the State's liability to any claim brought 'in a court in this State,' or words to that effect." *Id.* at 243. Moreover, the court emphasized, "[i]t would defy logic for the General Assembly to have waived sovereign immunity as to 'any claim,' thereby allowing all claims, whether in state or federal court, while simultaneously intending to preserve Eleventh Amendment immunity." *Id.*[9]

---

289 (1825), and yet thriving, *see Johnson*, 520 U.S. at 916, 117 S.Ct. 1800.

**9.** The Board contends on appeal that the Court of Appeals of Maryland undercut its *Zimmer–Rubert* decision by recognizing in a subsequent decision that the words "any claim" in the immunity provision do not apply to contract claims but only to "tort or

insurable claim[s], such as those for personal injury and for claims arising from alleged employment law violations." *Beka Indus., Inc. v. Worcester Cnty. Bd. of Educ.*, 419 Md. 194, 18 A.3d 890, 907 (2011) (internal quotation marks omitted). An effort to distinguish between tort claims and contract claims, however, does not diminish the conclusion

The Board faults the district court for deferring to *Zimmer–Rubert* rather than revisiting the *Atascadero* stringent test and ruling in the Board's favor—that the immunity provision's waiver of immunity as to "any claims" is insufficient to constitute a consent to lawsuits against the Board in federal court. As an initial matter, we reject the Board's insistence that the Court of Appeals failed to apply the stringent test. Indeed, it is fair to read *Zimmer–Rubert* as concluding that the "overwhelming implications" from the words "any claim" in the immunity provision "leave no room for any other reasonable construction" except that the immunity provision waives Eleventh Amendment immunity. *See Atascadero*, 473 U.S. at 240, 105 S.Ct. 3142. Moreover, we are reluctant to infer that the only way a state statute can satisfy the stringent test is to include the words "federal court" or "United States" in the statutory text. In any event, as we have already explained, we

owe deference to the Court of Appeals on the question of whether Maryland's legislature intended to consent to suit in federal court.[10]

Finally, it is of some importance that there has been no legislative response to the *Zimmer–Rubert* decision. In addressing that point, the Court of Appeals of Maryland has explained that "[t]he General Assembly is presumed to be aware of [the Court of Appeals's] interpretation of its enactments and, if such interpretation is not legislatively overturned, to have acquiesced in that interpretation." *Pye v. State*, 397 Md. 626, 919 A.2d 632, 637 (2007) (internal quotation marks omitted); *In re Wallace W.*, 333 Md. 186, 634 A.2d 53, 59–60 (1993) (emphasizing legislative acquiescence to interpretation by highest court of Maryland as indicative of legislative intent). Although only two years have passed since *Zimmer–Rubert* was decided, the legislative inaction is conspicuous given the minimal effort required. As the Court

reached in *Zimmer–Rubert* that the legislature intended the immunity provision to effect a waiver of Eleventh Amendment immunity as to claims concerning violations of employment law, the very type of claim alleged in this case.

10. The district court rejected the Board's assertion that the Court of Appeals was only in dicta observing that the State had "specified its intention [in the immunity provision] to subject itself to suit in federal court." *See Zimmer–Rubert*, 973 A.2d at 242. The Board contended in its motion for reconsideration that, because *Zimmer–Rubert* was pursued in state court, the only issue properly resolved was whether the immunity provision effected a waiver of immunity in state court. The Court of Appeals believed, however, that "[t]he dispositive question" in *Zimmer–Rubert* was "[w]hether the State of Maryland, pursuant to [the immunity provision] enacted a valid waiver of Eleventh Amendment immunity." *See* 973 A.2d at 236. Whether or not the question was necessarily before the Court of Appeals, the court's construction of the immunity provision was entirely unequivocal, leaving no doubt that the provision was

meant to waive all aspects of sovereign immunity (up to $100,000), both state and federal. Our distinguished colleague's view that the Court of Appeals interpreted only an intent to "preserve"—rather than to "waive"—Eleventh Amendment immunity supplies a thin reed on which to overrule Maryland's highest court concerning the scope of the immunity provision. *Cf. Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 289 (4th Cir.2001) (interpreting federal statute as not expressing "Congress' clear intent that participating States waive Eleventh Amendment immunity" since "language actually preserves a State's sovereign immunity"). Even accepting the dissent's characterization of *Zimmer–Rubert*'s pronouncement as dicta, however, it necessarily qualifies as "[c]onsidered dicta"—constituting "a clear exposition of the [state's] law" by a state's highest court, not "in conflict with other decisions of that court"—which "must be followed." *See Sherby v. Weather Bros. Transfer Co.*, 421 F.2d 1243, 1244 (4th Cir.1970); *see also Hawks v. Hamill*, 288 U.S. 52, 58–59, 53 S.Ct. 240, 77 L.Ed. 610 (1933).

of Appeals observed, if the statutory intent underlying the immunity provision were only to waive immunity in the state courts, the statute could be readily amended, by simply adding " 'in a court in this State,' or words to that effect." *See* 973 A.2d at 243. That no such amendment has been made further persuades us that the Court of Appeals did not misconstrue the breadth of the immunity provision or the intent of the legislature.

Accordingly, the district court properly adhered to the *Zimmer–Rubert* decision in ruling that the immunity provision effected a waiver of the Board's Eleventh Amendment immunity for claims of $100,000 or less. As a result, we are constrained to reject the Board's contentions to the contrary.

### IV.

Pursuant to the foregoing, we affirm the judgment of the district court.

*AFFIRMED*

BARBARA MILANO KEENAN,
Circuit Judge, dissenting:

The majority holds that the issue of Maryland's immunity from suit in federal court was a question properly decided by the state's highest court. Because I conclude that this Eleventh Amendment immunity question presents an issue of federal, rather than of state law, I respectfully dissent.

### I.

The issues of sovereign and Eleventh Amendment immunity present complex considerations of comity in our federalist system. The Supreme Court addressed some of the confusion regarding these two categories of immunity in its decision in *Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999).

In *Alden*, private plaintiffs attempted to sue the State of Maine in state court, seeking relief under a federal statute. *Id.* at 711, 119 S.Ct. 2240. The Supreme Judicial Court of Maine affirmed the decision of the trial court dismissing the claim on the ground of sovereign immunity. *Id.* On appeal, the United States Supreme Court affirmed and, in its opinion, addressed the primary distinction between the broad umbrella of sovereign immunity and the more narrow focus of Eleventh Amendment immunity. The Court stated:

> We have ... sometimes referred to the States' immunity from suit as "Eleventh Amendment immunity." The phrase is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from nor is limited by the terms of the Eleventh Amendment.

*Id.* at 713, 119 S.Ct. 2240. The Court further explained that "sovereign immunity derives not from the Eleventh Amendment but from the structure of the original Constitution itself." *Id.* at 728, 119 S.Ct. 2240.

A state's Eleventh Amendment immunity is merely a type of sovereign immunity "as it applies to suits filed in federal court." *Stewart v. North Carolina*, 393 F.3d 484, 488 (4th Cir.2005) (differentiating between Eleventh Amendment immunity and state sovereign immunity more generally). The decision in *Alden* addressed the doctrine of sovereign immunity with regard to suits filed in state court (hereafter, state court immunity).

States may waive both their state court immunity and their Eleventh Amendment immunity from suit in federal court. A waiver may be drawn either in the form of a statute or a constitutional provision. *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241, 105 S.Ct. 3142, 87 L.Ed.2d

171 (1985). However, an interpretation of a state's waiver with respect to state court immunity differs significantly from the question whether the state has waived its immunity from suit in federal court.

When a state is haled into one of its own courts, the relevant issue is one of state court immunity. Any issue whether a statute or constitutional provision effectively waives state court immunity is a decision resolved by that state's courts. A ruling from the state's highest court interpreting a statutory waiver provision is conclusive with respect to the nature and extent of the state's immunity in state court. As the Court in *Alden* observed, "the immunity of a sovereign in its own courts has always been understood to be within the sole control of the sovereign itself." 527 U.S. at 749, 119 S.Ct. 2240.

A state's Eleventh Amendment immunity, however, operates in an entirely different context. While state court immunity arises, and its contours are defined, in state court, issues regarding Eleventh Amendment immunity originate only in federal court. *See Hilton v. South Carolina Pub. Rys. Comm'n*, 502 U.S. 197, 204–05, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991) ("the Eleventh Amendment does not apply in state courts") (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 63–64, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)); *Atascadero*, 473 U.S. at 238 n. 2, 105 S.Ct. 3142 (citing *Employees v. Missouri Dep't of Pub. Health and Welfare*, 411 U.S. 279, 293–94, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973) (Marshall, J., concurring)). *See also Huang v. Bd. of Governors of the Univ. of North Carolina*, 902 F.2d 1134, 1139 (4th Cir.1990). Therefore,

while state courts have ample opportunity to address issues of state court immunity in disposing of cases, state courts have no cause to address issues of the state's Eleventh Amendment immunity from suit in federal court. In contrast, federal courts routinely confront issues regarding a state's Eleventh Amendment immunity from suit in federal court. Nevertheless, the majority, erroneously in my view, concludes that issues of Eleventh Amendment immunity are matters properly resolved under state law.

Undoubtedly, there is a certain visceral attraction in the majority's position. We regularly defer to a state court's interpretation of that state's statutes and constitutional provisions. *See Johnson v. Fankell*, 520 U.S. 911, 916, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997). However, in such cases, the state court will have interpreted those statutes and constitutional provisions to resolve actions pending before the state court. In contrast, the issue of Eleventh Amendment immunity from suit in federal court is fundamentally different, because state courts do not have cause to opine on a matter that arises exclusively in the federal courts and has no impact on the state court system.

## II.

To support its position that the resolution of Eleventh Amendment immunity presents a question of state law, the majority incorrectly interprets two Supreme Court cases [1] and relies on a case from one of our sister circuits. However, both Supreme Court precedent and our own Circuit precedent firmly establish the principle that issues regarding Eleventh

---

1. The majority also quotes from *Parden v. Terminal Railway of the Alabama State Docks Department*, 377 U.S. 184, 194, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964) for the proposition that waiver of immunity is an issue of state law.

However, the quotation is misleading, because it refers not to the Court's holding, or even to its analysis, but comes from a recitation of the respondent's argument.

Amendment immunity present questions of federal law.

### A.

In my view, the majority misconstrues the decision in *Palmer v. Ohio,* 248 U.S. 32, 39 S.Ct. 16, 63 L.Ed. 108 (1918). Employing certain language from *Palmer,* the majority asserts that the "waiver of sovereign immunity by a state constitutional provision or statute is a matter of state law, 'as to which the decision of the [state's highest court] is controlling.'" Op. at 249 (quoting *Palmer,* 248 U.S. at 34, 39 S.Ct. 16). According to the majority, this language from *Palmer* instructs that issues of states' immunity are controlled by decisions of the states' courts.

I conclude that the majority incorrectly applies the above language from *Palmer* by isolating the quoted language from its procedural and factual context. The petitioners in *Palmer* attempted to sue the State of Ohio *in state court* for flood-related damages caused by the elevation of a spillway of a state-maintained dam. *Id.* at 33, 39 S.Ct. 16. Faced with the barrier of *state sovereign immunity,* the petitioners relied on an amendment to the state constitution. The Supreme Court of Ohio concluded that the state constitution did not confer the state's consent to be sued in state court, and the petitioners appealed to the Supreme Court of the United States. In dismissing the writ of error for lack of jurisdiction, the Supreme Court stated that:

> The right of individuals to sue a State, in either a federal or a state court, cannot be derived from the Constitution or laws of the United States. It can come only from the consent of the State. Whether Ohio gave the required consent must be determined by the construction to be given to the constitutional amendment quoted, and this is a question of local

state law, as to which the decision of the State Supreme Court is controlling with this court, no federal right being involved.

*Id.* at 34, 39 S.Ct. 16 (citations omitted).

The decision in *Palmer,* therefore, is entirely consistent with the principles stated in *Alden.* In a suit brought in a state court against that state by certain of its citizens, the state's highest court undoubtedly is the final arbiter of the issue whether the state has waived its state court immunity. Such a suit does not present an issue of Eleventh Amendment immunity from suit in federal court.

Relying on a misapplication of *Palmer,* however, the majority seeks to distinguish the holding of *Lapides v. Board of Regents of the University System of Georgia,* 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002). There, the Supreme Court employed the clear rule that the issue "whether a particular set of state laws, rules, or activities amounts to a waiver of the State's Eleventh Amendment immunity is a question of federal law." *Id.* at 623, 122 S.Ct. 1640.

The majority attempts to dismiss the import of this plain statement by noting that the issue presented in *Lapides* involved the process of removal of a case to federal court, a state "activity." Considering itself bound by its reading of *Palmer,* the majority concludes that it may not construe *Lapides* to overrule *Palmer* "implicitly." Op. at 250. However, because *Palmer* does not have a substantive impact on *Lapides,* the two decisions can be interpreted in a parallel manner. Thus, the Supreme Court's instruction in *Lapides,* that the issue "whether a particular set of state laws ... amounts to a waiver of the State's Eleventh Amendment immunity is a question of federal law," is dispositive

here.[2] *Lapides*, 535 U.S. at 623, 122 S.Ct. 1640.

## B.

The decision in *Lapides* does not stand alone. Both before and after the decision in *Lapides*, this Court has held that "questions of [E]leventh [A]mendment immunity are ultimately governed by federal law." *Md. Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 262 (4th Cir.2005) (quoting *Ram Ditta v. Md. Nat'l Cap. Park and Planning Comm'n*, 822 F.2d 456, 459–60 (4th Cir.1987)); *Gray v. Laws*, 51 F.3d 426, 437 (4th Cir.1995) (same). Nor are we the only circuit to have so held. *See Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 405 F.3d 1298, 1314 (11th Cir.2005) ("[T]he County confuses the state law doctrine of sovereign immunity with the doctrine of Eleventh Amendment immunity governed by federal law and applicable only in federal court.").

The only context in which a state court deciding the merits of a state action can address Eleventh Amendment immunity is in dicta. This, of course, is exactly what the Maryland Court of Appeals has done in *Board of Education of Baltimore County v. Zimmer–Rubert*, 409 Md. 200, 973 A.2d 233 (2009). In that case, the Maryland Court of Appeals faced a question of state court immunity. For reasons that are not clear, the court described its analysis as being one of Eleventh Amendment immunity.[3] Because the Eleventh Amendment was entirely unrelated to answering the question before the court in *Zimmer–Rubert*, the Maryland Court of Appeals' commentary on that issue was purely dicta. Further, because a state's Eleventh Amendment immunity from suit in federal court is an issue of federal, rather than of state law, this dicta in *Zimmer–Rubert* is neither relevant to, nor informative of, the present action.

I acknowledge that the analytic framework for resolving a question of Eleventh Amendment immunity is somewhat of an oddity in the law. It seems anomalous that the authoritative interpretation of a state statute rests with the federal courts. This result, however, is the unavoidable consequence of the Supreme Court's reasoning. In addition to the clear statement set forth in *Lapides*, the Supreme Court's analysis in *Atascadero* likewise compels this conclusion.

The analysis used by the Supreme Court in *Atascadero* underscores the federal nature of Eleventh Amendment immunity questions. There, the Supreme Court instructed that federal courts considering this issue focus their attention on the language of the statute under review. "[I]n order for a *state statute or constitutional provision* to constitute a waiver of Eleventh Amendment immunity, *it* must specify the State's intention to subject itself to suit in *federal court.*" *Id.* at 241, 105 S.Ct. 3142 (first two emphases added). Thus, the plain language of the statute or constitutional provision must "specify the State's

---

2. Because *Palmer* only addressed state court immunity rather than Eleventh Amendment immunity, any impact *Palmer* has on the question of Eleventh Amendment immunity would be purely dicta. Thus, if the majority is correct that the statement in *Lapides* is dicta, and we are required to choose between dicta from a century ago in *Palmer* and dicta from a decade ago in *Lapides*, I have little difficulty choosing the latter.

3. The Maryland Court of Appeals stated that "[t]he question before this Court is, essentially, whether [the immunity provision] waives the Board's Eleventh Amendment immunity as to Zimmer–Rubert's ADEA suit." *Zimmer–Rubert*, 973 A.2d at 237. However, the only pertinent issue in that case was the applicability of state court immunity. *See Hilton*, 502 U.S. at 204–05, 112 S.Ct. 560.

intention to subject itself to suit in federal court." *Id.* (citation and internal quotation marks omitted). *See also Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) ("[W]e will find waiver only where stated by the most express language or by such overwhelming implications *from the text* as will leave no room for any other reasonable construction." (internal quotation marks omitted) (emphasis added)).

This strict requirement of *Atascadero,* that a statute specify the state's intent to subject itself to suit in federal court, exemplifies the federal nature of the Eleventh Amendment immunity analysis. "The test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one. Although a State's general waiver of sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment." *Atascadero,* 473 U.S. at 241, 105 S.Ct. 3142. As the Court noted in a later case, federal courts must "indulge every reasonable presumption against waiver." *College Sav. Bank v. Fl. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 682, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999). In no portion of this guidance does the Supreme Court even suggest that pronouncements from state courts play any role in ascertaining a state's immunity from suit in federal court.

Instead of applying the plain directive of *Atascadero,* the majority relies primarily on a single, divergent circuit court case.[4] In *Della Grotta v. State of Rhode Island,* the First Circuit held that Rhode Island waived its Eleventh Amendment immunity by statute, even though that statute did not meet the standard for waiver established in *Atascadero.* 781 F.2d 343, 346–47 (1st Cir.1986). The First Circuit concluded that Rhode Island had consented to suit in federal court because, in a prior case, a federal district court had certified the question of Eleventh Amendment immunity with respect to that same statute to the Rhode Island Supreme Court, which had determined that Rhode Island in fact had waived its Eleventh Amendment immunity.[5] *Id.* (citing *Laird v. Chrysler Corp.,* 460 A.2d 425 (R.I.1983)). In contrast to the principles emphasized in *Atascadero, Edelman,* and *Lapides,* the decision in *Della Grotta* stands alone.

For these reasons, I conclude that the issue of waiver of Eleventh Amendment immunity is a question of federal law. Therefore, rather than rely on the analysis provided by the Maryland Court of Appeals regarding the effect of the state statutory immunity provision, I conclude that an independent inquiry is required, using the analysis set forth in *Atascadero.*

## III.

Although the majority and the Maryland Court of Appeals cite the analyses of *Atas-*

---

4. The majority also references *Minotti v. Lensink,* 798 F.2d 607 (2d Cir.1986), which the majority asserts applied the *Della Grotta* analysis. However, unlike the decision in *Della Grotta,* the holding in *Minotti* did not rely on any state court decisions because the Second Circuit concluded, unsurprisingly, that there were no relevant state court decisions addressing Eleventh Amendment immunity. 798 F.2d at 610–11; *see also Huang,* 902 F.2d at 1139 (same).

5. Of course, because Eleventh Amendment questions are issues of federal law, the outlying nature of *Della Grotta* is easily explained by the improper use of certification, which is designed to assist federal courts in considering questions of state law. But for the certification request by the federal district court in *Laird,* Rhode Island would not have confronted the issue of Eleventh Amendment waiver, and *Della Grotta* would have upheld Rhode Island's immunity from suit in federal court.

*cadero* and *Edelman,* neither the majority nor the Maryland court follows the guidance provided by those decisions. In considering the Eleventh Amendment waiver issue in *Zimmer–Rubert,* the Maryland Court of Appeals instead compared the present statutory language that a "county board of education may not raise the defense of sovereign immunity to *any claim* of $100,000 or less," Md.Code Cts. & Jud. Proc. Ann. § 5–518(c) (emphasis added), with a different immunity provision reviewed in *Maryland v. Sharafeldin,* 382 Md. 129, 854 A.2d 1208 (2004). There, the provision at issue stated, in relevant part, that certain governmental entities cannot "raise the defense of sovereign immunity in a contract action, *in a court of the State,* based on a written contract...." Md. St. Gov't Code Ann. § 12–201 (emphasis added).

The Maryland Court of Appeals in *Zimmer–Rubert* relied heavily on the differences in the phrases of these two statutes emphasized above. Comparing the language at issue in *Sharafeldin* to the immunity provision at issue in *Zimmer–Rubert,* the Maryland court stated that "the General Assembly has not demonstrated an intent to *preserve* its Eleventh Amendment immunity" under the immunity provision. *Zimmer–Rubert,* 973 A.2d at 242 (emphasis added). The majority agrees with this conclusion. Op. at 253–54.

In my view, this analysis misses the mark. It is not the intention to *preserve,* but rather the intention to *waive,* that is critical to the Eleventh Amendment analysis. *See College Sav. Bank,* 527 U.S. at 682, 119 S.Ct. 2219. Thus, the analysis in *Zimmer–Rubert,* which distinguishes the statutory language at issue in *Sharafeldin* from the language of the immunity provision, fails to demonstrate the required "overwhelming implication" that "leave[s] no room for any other reasonable construction." *Edelman,* 415 U.S. at 673, 94 S.Ct. 1347.

Here, the text of the immunity provision does not provide a clear pronouncement by Maryland of its consent to be sued in federal court. As was the case in *Atascadero,* the immunity provision "does not *specifically* indicate the State's willingness to be sued in federal court." 473 U.S. at 241, 105 S.Ct. 3142 (emphasis added). Moreover, the immunity provision does not make any reference whatsoever to federal courts or to lawsuits filed in those courts. *Cf. Kennecott Copper Corp. v. State Tax Comm'n,* 327 U.S. 573, 577–79, 66 S.Ct. 745, 90 L.Ed. 862 (1946) (holding that language authorizing suit "in any court of competent jurisdiction" does not constitute valid consent to federal jurisdiction). While the majority declines to adopt a rule that the words "federal court" or "United States" must be employed in order to effectuate a waiver of Eleventh Amendment immunity, op. at 254, no waiver provision that has failed to employ those words, at least by implication, has survived Supreme Court scrutiny.[6]

### IV.

Although the *Zimmer–Rubert* analysis may be a sufficient exercise in statutory construction were no presumption involved, the strong presumption against waiver in the Eleventh Amendment context compels me to conclude that Maryland's Eleventh Amendment immunity has

---

**6.** In *Port Authority Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990), the Supreme Court concluded that the state waived Eleventh Amendment immunity based on the interplay between the immunity provision and the relevant venue provision, the latter of which "expressly indicate[d] that the State's consent to suit extend[ed] to federal court." *Id.* at 307, 110 S.Ct. 1868.

not been waived by the immunity provision. In my view, to hold otherwise yields the result that this Court is bound by a state court's erroneous interpretation of federal law. Thus, I would reverse the decision of the district court and enter final judgment in favor of Prince George's County Public Schools.