**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 23-2053**

───────────────

GLOBAL INNOVATIVE CONCEPTS, LLC; A.I. FIRST ALABAMA, LLC; ALLEN
KILGORE,

         Plaintiffs – Appellees,

v.

STATE OF FLORIDA, DIVISION OF EMERGENCY MANAGEMENT,

         Defendant – Appellant.

───────────────

Appeal from the United States District Court for the Eastern District of North Carolina, at
Raleigh. Louise W. Flanagan, District Court Judge. (5:23-cv-00069-FL)

───────────────

Argued:  May 8, 2024                                    Decided:  June 18, 2024

───────────────

Before NIEMEYER, RUSHING, and HEYTENS, Circuit Judges.

───────────────

Order vacated and remanded for further proceedings by published opinion. Judge Heytens
wrote the opinion, which Judge Niemeyer and Judge Rushing joined.

───────────────

**ARGUED:** George T. Levesque, GRAYROBINSON, PA, Tallahassee, Florida, for
Appellant. Brian James Lee, MORGAN & MORGAN, Jacksonville, Florida, for
Appellees. **ON BRIEF:** Neil A. Riemann, PARRY LAW, PLLC, Chapel Hill, North
Carolina; Ashley H. Lukis, Stephen K. Varnell, GRAYROBINSON, PA, Tallahassee,
Florida, for Appellant.

───────────────

TOBY HEYTENS, Circuit Judge:

The Florida Division of Emergency Management contracted with a private company to obtain medical supplies during the COVID-19 pandemic. Three plaintiffs later sued the Division for breach of contract in federal court in North Carolina. The Division moved to dismiss based on sovereign immunity and the district court denied that motion.

We vacate the district court's order and remand for further proceedings. Both the district court's rejection of the Division's motion and the plaintiffs' arguments against our appellate jurisdiction reflect the same error: a failure to distinguish between the defenses and immunities a State might enjoy under state law and the constitutionally protected sovereign immunity that States enjoy from suit in federal court. Viewing matters through the correct analytical lens, we conclude that we have appellate jurisdiction and that the district court erred in concluding that the Division waived its sovereign immunity by contracting with the plaintiffs. We thus vacate the district court's order and remand for further proceedings consistent with this opinion.

I.

In March 2020, the Division contracted with Essential Diagnostics, LLC to buy 200,000 COVID-19 test kits for $2.2 million. The precise terms of the parties' agreement are disputed. A typewritten document labeled "Purchase Order" sent by Essential and signed by the Division's director on March 22 says the parties "agree that the terms of the sale set forth in this Purchase Order are subject in [their] entirety to the Terms and Conditions of Sale attached hereto as Exhibit A." JA 132 (emphasis removed). The attached preprinted document, in turn, includes a venue provision stating: "All disputes

2

with respect to this Agreement shall be brought and heard either in the North Carolina state courts located in Wake County, North Carolina, or the federal district court for the Eastern District of North Carolina located in Raleigh, North Carolina." JA 135.

That same day, however, there was also other correspondence between Essential and the Division regarding the agreement. In one email, the Division's deputy director told Essential that "[t]o do business with The State of Florida, there are a few steps which need to be taken" and attached a flyer containing a step-by-step guide for registering with a website called MyFloridaMarketPlace. JA 269. Essential responded "[t]hank you" and said "[w]e will have it done in the next hour." *Id.* According to the Division, it also sent a response to Essential's purchase order indicating that a "formal PO" memorializing the agreement would only be issued after Essential registered on MyFloridaMarketplace. JA 137. Later that day, Essential registered on MyFloridaMarketPlace, and according to the Division, another purchase order was then issued including a conflicting venue provision: "The Parties submit to the jurisdiction of the courts of the State of Florida exclusively for any legal action related to the Purchase Order." JA 148.

After that, the parties' dealings get messy. What matters for our purposes is that Essential claimed the Division ultimately ordered 600,000 tests but only paid for 200,000. The Division, in contrast, insisted that it only ever agreed to buy 200,000 tests and that it paid for them in full.

With matters at an impasse a few years later, Essential assigned its rights under the contract to Global Integrated Concepts, which sued the Division in Florida state court.

3

Three months later, however, Global voluntarily dismissed one count, and the state court dismissed the complaint's other two counts without prejudice.

Enter this suit. In February 2023, Global and two other parties involved in the transaction sued the Division in federal district court in North Carolina, seeking to recover the same $4.4 million Global sought as damages in its state court suit.

The Division moved to dismiss the suit as barred by—among other things—sovereign immunity. In response, the plaintiffs argued the Division waived its sovereign immunity by contracting with Essential and agreeing to the forum-selection clause in Essential's purchase order. The district court denied the motion to dismiss.

## II.

Before turning to the specific issues the parties raise, we first address an apparent confusion that pervades this case. The confusion involves the distinction between defenses or immunities that a defendant (including a State) may enjoy under state law and the federal-law protected sovereign immunity that States (and only States) enjoy from suit in federal and state court. Only the latter is relevant here.

A State's sovereign immunity under federal law is "a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today." *Alden v. Maine*, 527 U.S. 706, 713 (1999). Because this immunity derives from federal law, mapping its contours presents "question[s] of federal law," as does deciding "whether a particular set of state laws, rules, or activities amounts to a waiver" of it. *Lapides v. Board of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 623 (2002);

accord *Arkansas Dep't of Educ. v. Jacoby*, 527 U.S. 1031 (1999) (vacating and remanding Arkansas Supreme Court decision construing the State's federal-law sovereign immunity).

Contrast that with any immunities or defenses a defendant may enjoy under state law, over which each State exercises plenary control. States may choose to call those defenses or immunities whatever they want (including "sovereign immunity"), and they may make those defenses or immunities available to persons or entities that may not be entitled to sovereign immunity as a matter of federal law. But the two categories are distinct, and just because a person or entity has a defense or immunity under state law does not mean it can claim federal-law sovereign immunity. See *Jinks v. Richland Cnty.*, 538 U.S. 456, 465–66 (2003) (noting that South Carolina law granted protections labeled "sovereign immunity" under state law to some political subdivisions, but reiterating that such entities enjoy no sovereign immunity under federal law); compare, *e.g.*, *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991) (reaffirming that state officers sued in their individual capacity for actions taken under color of state law do not enjoy sovereign immunity under federal law), with *Ex parte Davis*, 930 So. 2d 497, 500–01 (Ala. 2005) (stating that, under Alabama law, sovereign immunity bars "a claim for monetary damages" against state officers "in the officer[s'] individual capacity . . . whenever the acts that are the basis of the alleged liability were performed within the course and scope of the officer[s'] employment").

That is not to say that States lack power over their federal-law sovereign immunity. Most importantly, a State can waive that immunity and allow itself to face suit. See, *e.g.*, *Lapides*, 535 U.S. at 616. But the principles governing whether a given act waives a State's federal-law sovereign immunity are matters of federal law, even if federal courts may defer

to a state court's construction of a State's own statutes in applying those principles. See *Lee-Thomas v. Prince George's Cnty. Pub. Schs.*, 666 F.3d 244, 251–52 (4th Cir. 2012). In contrast, waivers of state-law created defenses or immunities are governed by state-law principles, and thus may not require the same "express language or . . . overwhelming implication from the text" that is needed to waive the sovereign immunity protected by federal law. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 240 (1985) (quotation marks removed); see, *e.g.*, *Wray v. City of Greensboro*, 802 S.E.2d 894, 899 (N.C. 2017) (holding that, under North Carolina law, both the State and its local governments waive the immunity that they would otherwise enjoy from suit by "enter[ing] into a valid contract, to the extent of that contract").

One final bit of table-setting is necessary. A State may invoke its federally protected sovereign immunity in federal court, its own courts, or those of other States. See, *e.g.*, *Hans v. Louisiana*, 134 U.S. 1, 9–11 (1890); *Alden*, 527 U.S. at 712; *Franchise Tax Bd. of Cal. v. Hyatt*, 587 U.S. 230, 236 (2019). But because "a State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued," a State may permissibly limit any waiver "to suit[s] in the courts of its own creation." *Atascadero*, 473 U.S. at 241 (quotation marks removed) (first quote); *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999) (second quote). Thus, to waive its sovereign immunity in federal court, a State "must specify the State's intention to subject itself to suit in *federal court*" specifically—no "general waiver" will suffice. *Atascadero*, 473 U.S. at 241.

6

III.

With those distinctions in mind, we begin by rejecting the plaintiffs' argument that we lack jurisdiction over this appeal. The plaintiffs contend that, as a matter of "Florida sovereign immunity law," sovereign immunity "provides only a defense to liability rather than immunity from suit." Plaintiffs' Br. 7. But see *Florida Highway Patrol v. Jackson*, 288 So. 3d 1179, 1185 (Fla. 2020) ("In Florida, sovereign immunity is *both* an immunity from liability and an immunity from suit." (emphasis added)). The plaintiffs also quote a decision of this Court stating that—where a form of "governmental immunity" confers "immunity from liability only" (rather than "immunity from suit")—we lack appellate jurisdiction to hear an appeal from an otherwise non-final order under the collateral order doctrine. *Gray-Hopkins v. Prince George's Cnty.*, 309 F.3d 224, 231 (4th Cir. 2002).

None of that has anything to do with the issue here. The Division's motion to dismiss repeatedly invoked its "Eleventh Amendment immunity" (JA 78–79), a common (though somewhat inaccurate) shorthand for the federal-law doctrine that protects non-consenting States from suit in federal court. See *Stewart v. North Carolina*, 393 F.3d 484, 487–88 (4th Cir. 2005). *That* doctrine "confer[s] immunity from suit" and is not "merely a defense to liability." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 145 (1993). And it is settled law that, under federal procedural rules, "[s]tates and state entities . . . may take advantage of the collateral order doctrine to appeal" a federal district court's order "denying a claim of" federal-law sovereign immunity. *Id.* at 147.

IV.

Having confirmed we have appellate jurisdiction, we conclude that the district court

7

erred in rejecting the Division's claim of immunity from suit in federal court.

The error in the district court's analysis is by now a familiar one: a failure to attend to the difference between whether a State has waived its state-law immunity from suit in state court and whether the State has waived its federal-law immunity from suit in federal court. The court's conclusion that the Division waived its sovereign immunity was based on precedent from the Florida Supreme Court saying that "where the state has entered into a contract fairly authorized by the powers granted by general law, the defense of sovereign immunity will not protect the state from action arising from the state's breach of that contract." JA 231 (quoting *Pan-Am Tobacco Corp. v. Department of Corrs.*, 471 So. 2d 4, 5 (Fla. 1984)). And although the Division would ordinarily not have the authority to make a contract without including a provision insisting that any litigation occur in Florida, see Fla. Admin. Code. Rule 60A-1.002(7)(b), the district court concluded any such restrictions had been suspended by emergency orders issued in response to the COVID-19 pandemic.

That reasoning falters at its first step. The rules governing waiver of federal-law sovereign immunity in federal court come from federal law, not state law. See *Lapides*, 535 U.S. at 623; *Lee-Thomas*, 666 F.3d at 248. And under those rules, States retain their immunity from suit in federal court absent "express language" or "overwhelming implication" that a State intends "to subject itself to suit in *federal court*" specifically. *Atascadero*, 473 U.S. at 240–41. Neither the decision cited by the district court nor any Florida law authority that has been brought to our attention says the State waives its federal-law immunity from suit in federal court every time it makes a contract. Compare *Lee-*

8

*Thomas*, 666 F.3d at 253 (noting state's highest court had construed a state statute as consenting "to suit in federal court"). To the contrary, the only relevant Florida authority we have been able to locate says the opposite. *See* Fla. Stat. § 768.28(18) ("No . . . section of the Florida Statutes . . . shall be construed to waive the immunity of the state or any of its agencies from suit in federal court.").

The plaintiffs also press a fallback argument. They insist that, even if the existence of a contract alone is not enough to waive the Division's federal-law sovereign immunity, the Division waived its sovereign immunity here by entering a contract containing a forum-selection clause authorizing suit in federal court in North Carolina. The Division responds that the parties never agreed to a North Carolina forum-selection clause and that, even if they did, such a clause is insufficient to waive its sovereign immunity. The district court did not reach these issues, and we decline to do so in the first instance. *See*, *e.g.*, *Scott v. Baltimore Cnty.*, 101 F.4th 336, 349–50 (4th Cir. 2024) (emphasizing that "we are a court of review, not of first view" (quotation marks removed)). We thus vacate the district court's order and remand for further proceedings.

*    *    *

The district court's order is vacated, and the matter is remanded for further proceedings consistent with this opinion.

*SO ORDERED*

9