An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 24-736

Filed 16 July 2025

Jackson County, No. 23CVS000548-490

ZP NO. 335, LLC,

      Plaintiff,

      v.

WESTERN CAROLINA UNIVERSITY & THE BOARD OF TRUSTEES
OF THE ENDOWMENT FUND OF WESTERN NORTH CAROLINA UNIVERSITY,

      Defendants.

Appeal by defendants from an order denying their motion to dismiss entered 15 March 2024 by Judge Alan Z. Thornburg in Haywood County Superior Court. Heard in the Court of Appeals 25 February 2025.

*Roberts & Stevens, P.A., by William Clarke, Ann-Patton Hornthal, and Carly K. Gillingham, for plaintiff.*

*University of North Carolina, by Attorney Laura E. Dean, and Attorney General Jeff Jackson, by Special Deputy Attorney General Adrina G. Bass, for defendants.*

FREEMAN, Judge.

Defendants appeal from an order denying their motion to dismiss entered 15 March 2024. On appeal, defendants argue the trial court erred in denying their

motion to dismiss plaintiff's amended complaint under Rules 12(b)(1), (2), and (6) of the North Carolina Rules of Civil Procedure. Defendants specifically challenge the trial court's jurisdiction over plaintiff's negligent misrepresentation, breach of contract, and alternative promissory estoppel claims. Further, defendants petition this Court for a writ of certiorari to consider whether plaintiff's amended complaint fails to state a breach of contract claim under North Carolina Rule of Civil Procedure 12(b)(6). After careful consideration, we deny defendants' petition for writ of certiorari, affirm the trial court's denial of defendants' motion to dismiss plaintiff's breach of contract claim, decline to consider the trial court's denial of defendants' motion to dismiss plaintiff's alternative promissory estoppel claim, and reverse the trial court's denial of defendants' motion to dismiss plaintiff's negligent misrepresentation claim.

## I.    Factual and Procedural History

In 2014, defendants Western Carolina University ("WCU") and the Endowment Fund of Western Carolina University (the "Endowment Fund") entered into a ground lease agreement for 344 acres of real property for WCU's new Millennial Campus. In November 2017, the Endowment Fund issued a request for qualifications to create student housing on the Millennial Campus. This request bore WCU's logo and provided that all contracts were subject to WCU's approval. Then and throughout this case, WCU maintained a policy that required all first-year student

undergraduate students to live in on-campus residence halls for "two academic years[.]" This policy, Policy 96, also detailed a process by which WCU could release students from its requirements.

On 1 February 2018, plaintiff's parent company, Zimmer Development Company, LLC ("Zimmer"), submitted a proposal to the Endowment Fund. Zimmer's proposal described a student off-campus housing project made up of eight buildings and 496 beds in apartment-style student housing. After submitting this proposal, Zimmer began communicating with WCU's Vice Chancellor for Administration and Finance, Michael Byers. In an email response on 8 June 2018, Byers answered a range of questions from Zimmer regarding project design, campus facilities, enrollment, amenities, and Policy 96. Zimmer specifically asked, "What is the long term plan for on-campus housing requirements at WCU? Currently 2-year freshman and 1-year transfer – any future consideration to modifying this?" To which Byers replied, "No plans to modify. We have never actually required sophomores to live on campus. Although our policy states it, we have released sophomores from this policy each year."

On 6 December 2018, plaintiff and defendants entered into a subground lease agreement for approximately 15 acres of the Millennial Campus to construct a student housing facility known as "the Husk." The sublease signed by all parties contained the following provision:

**Section 3.3** <u>University and Sublessor's Obligations to</u>

Millennial Campus. The Sublessor and University hereby agree as follows:

. . .

e. Sublessor covenants and agrees that without the prior written consent of Sublessee (not to be unreasonably withheld, conditioned or delayed), Sublessor shall not:

(i) grant or convey to the owner or occupant of any real property adjoining or adjacent to Millennial Campus any rights, easements, or privileges in or to the portions of the common area of Millennial Campus adjacent to the Project . . . (the "**Restricted Area**"), which would (x) materially adversely affect Sublessor's Permitted Uses of the Project, or (y) unreasonably impose any material additional obligation, cost or expense on Sublessee, or

(ii) adopt any rules and regulations and/or cause any declaration (or amendment thereto) to be recorded with respect to the Restricted Area, which would (x) materially adversely affect Sublessor's Permitted Uses of the Project, or (y) unreasonably impose any material additional obligation, cost or expense on Sublessee.

In August 2020, plaintiff completed construction of the Husk and alleged in its pleadings to the trial court that "during the 2020–2021 school year, the Husk achieved a 98% occupancy rate." Before the start of the 2021–2022 academic year, WCU opened three new university-owned on-campus residence halls: Water Rock Hall, Shining Rock Hall and Black Rock Hall. The addition of these new dormitories created roughly 900 beds and were created by WCU "for first year student living." In September 2021, WCU stated in a Division of Student Affairs email titled "Residential Living – Policy 96 Update" that beginning in the 2022–2023 school year, it would require first and second year students to live on campus. WCU shared its

decision to enforce the policy "was made with several pieces of information in mind, including a significant drop in the freshman retention rate and impact this can have on a student's long-term academic success." Plaintiff alleged it was first made aware of the Policy change through this email.

Plaintiff filed a complaint against defendants on 5 September 2023, asserting claims for breach of contract, detrimental reliance, and negligent misrepresentation. On 5 October 2023, defendant moved to dismiss plaintiff's complaint under North Carolina Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). Plaintiff filed an amended complaint on 4 December 2023 and asserted claims for breach of contract, or in the alternative promissory estoppel, and negligent misrepresentation. Defendants again moved to dismiss the amended complaint on the same basis. The parties consented to being heard out of county, and defendant's motion to dismiss was heard and denied in Haywood County Superior Court on 4 March 2024. Subsequently, defendants timely filed a notice of appeal and a petition for writ of certiorari.

## II.    Interlocutory Jurisdiction

Appeal lies of right to this Court "[f]rom any final judgment of a superior court[.]" N.C.G.S. § 7A-27(b)(1) (2023). In this case, defendants' appeal from the superior court's order denying its motion to dismiss plaintiff's claims is interlocutory because there is no final judgment. *See Lannan v. Bd. of Governors of Univ. of N.C.*, 285 N.C. App. 574, 582 (2022) ("[T]he denial of a motion to dismiss is not immediately

appealable because it is an interlocutory order." (cleaned up)).

However, interlocutory orders are immediately appealable when "the order in question affects a substantial right." *State ex rel. Stein v. Kinston Charter Acad.*, 379 N.C. 560, 571 (2021) (citing N.C.G.S. § 7A-27(b)(3)(a) (2019)); *see also* N.C. R. App. P. 21(a)(1) (2023); N.C.G.S. § 1-277(a) (2023). "This Court has held that a denial of a Rule 12(b)(6) motion to dismiss on the basis of sovereign immunity affects a substantial right and is immediately appealable." *Green v. Kearney*, 203 N.C. App. 260, 266 (2010).

Likewise, this Court has held that a "denial of a Rule 12(b)(2) motion premised on sovereign immunity constitutes an adverse ruling on personal jurisdiction and is therefore immediately appealable under section 1–277(b)." *Can Am S., LLC v. State*, 234 N.C. App. 119, 124 (2014). However, "orders denying Rule 12(b)(1) motions to dismiss based on sovereign immunity are not immediately appealable because they neither affect a substantial right nor constitute an adverse ruling as to personal jurisdiction." *Id.*

Accordingly, this Court has jurisdiction to hear this appeal to the extent the trial court's denial of defendants' motion to dismiss affects a substantial right. Therefore, we only consider the trial court's denial of defendants' motion to dismiss under rules 12(b)(6) and 12(b)(2) based on defendants' assertion of sovereign immunity. *See id.*

### III.    Defendants' Petition for Writ of Certiorari

Recognizing this Court only has jurisdiction to review the trial court's denial of their motion to dismiss under Rules 12(b)(6) and (2) as it specifically relates to sovereign immunity, defendants filed a petition for writ of certiorari seeking review of issues over which we do not possess jurisdiction. Specifically, defendants' ask this Court to review "all of the grounds for dismissal raised in defendants' motion, including whether Plaintiff's Amended Complaint fails to state a breach of contract claim under North Carolina Rule of Civil Procedure 12(b)(6)." Defendants contend issuance of the writ of certiorari would "be fair and just" and "serve the expeditious administration of justice" because those grounds which are not immediately appealable as of right are "inextricably intertwined" with those that are.

Defendants cite to this Court's decision to grant the appellant's petition for writ of certiorari in *Lannan v. Bd. of Governors of Univ. of N.C.*, 285 N.C. App. 574, *review allowed, writ allowed*, 883 S.E.2d 449 (N.C. 2023), and *aff'd as modified*, 913 S.E.2d 163 (N.C. 2025). This Court granted the appellant's petition for writ of certiorari in *Lannan* when the determination of valid legal contract linked all other legal issues on appeal. *Id.* at 585–86. In that case, the appellant disputed the existence of a valid contract. *Id.* at 585. Therefore, we articulated that review of other issues—such as a 12(b)(6) issue in a breach of contract claim—was necessary because if no valid contract existed, the Court could not go on to analyze whether a sovereign immunity exception applied. *Id.* at 585–86. In other words, we had to first determine whether the appellee had adequately pled a valid contract before deciding

whether the appellant had sovereign immunity. *Id.*

That is not the case here. Defendants argue if this Court "were to follow a two-step analysis to evaluate the viability of" plaintiff's equitable estoppel claim, "whether [p]laintiff sufficiently alleged a breach of contract claim under . . . [Rule] 12(b)(6) is wholly encompassed in the Court's lengthier examination as to whether sovereign immunity bars [p]laintiff's alternative equitable claim." Defendants further argue that "[i]f the Court reviews whether Plaintiff failed to allege a breach of the contract to determine whether its alternative claim springs to life, the Court has already completed a major part, if not all, of the Rule 12(b)(6) breach of contract analysis." However, unlike in *Lannan*, the parties here do not dispute that a valid contract existed. Thus, there is no need for this Court to review whether plaintiff sufficiently pled either breach or equitable relief to review defendants' sovereign immunity defense. Rather, because defendants' sovereign immunity defense is not so linked to the other issues in this present case as to affect the outcome, we confine our review to what is properly before us. Because the present case is incomparable to *Lannan*, and therefore, the issue of plaintiff's breach claim is not so inextricably intertwined with the issues properly before us, we deny defendants' petition for writ of certiorari.[1]

## IV. Standard of Review

---

[1] Further, defendants' petition failed to demonstrate merit and extraordinary circumstances. *See Cryan v. Nat'l Council of Young Men's Christian Ass'ns of U.S.* 384 N.C. 569, 572–73 (2023).

"This Court reviews a trial court's decision to grant or deny a motion to dismiss based upon the doctrine of sovereign immunity using a de novo standard of review." *State ex rel. Stein*, 379 N.C. at 571.

## V.  Discussion

Properly before this Court on appeal is the issue of whether the trial court erred in denying defendants' motion under Rules 12(b)(2) and (6) on the ground that sovereign immunity barred plaintiff's breach of contract, negligent misrepresentation, and promissory estoppel claims.

### A.  Breach of Contract

"As a general rule, under the doctrine of sovereign immunity, the State is immune from suit absent waiver of immunity." *Wray v. City of Greensboro*, 370 N.C. 41, 47 (2017) (cleaned up). "The doctrine of sovereign immunity applies not only to suits in which the State is a named defendant, but also to actions against its departments, institutions, and agencies." *Jones v. Pitt Cnty. Mem'l Hosp., Inc.*, 104 N.C. App. 613, 616 (1991). Therefore, a university is a state agency "to which the doctrine of sovereign immunity applies." *Kawai Am. Corp. v. Univ. of N.C.*, 152 N.C. App. 163, 165 (2002) (citation omitted). "The State's sovereign immunity applies to both its governmental and proprietary functions, while the more limited governmental immunity covers only the acts of a municipality or a municipal corporation committed pursuant to its governmental functions." *Evans v. Hous. Auth. of City of Raleigh*, 359 N.C. 50, 53 (2004).

"[U]nder North Carolina law, both the State and its local governments waive the immunity that they would otherwise enjoy from suit by enter[ing] into a valid contract, to the extent of that contract[.]" *Global Innovative Concepts, LLC v. State*, 105 F.4th 139, 143 (4th Cir. 2024) (citation omitted). Therefore, "whenever the State of North Carolina, through its authorized officers and agencies, enters into a valid contract, the State implicitly consents to be sued for damages on the contract in the event it breaches the contract," such that "the doctrine of sovereign immunity will not be a defense to the State." *Smith v. State*, 289 N.C. 303, 320 (1976). "The State will occupy the same position as any other litigant." *Wray*, 370 N.C. at 48 (cleaned up).

In the present case, defendants are state actors and therefore entitled to sovereign immunity. *Id.* (citation omitted). However, because the parties do not dispute they formed a valid contract, defendants waived sovereign immunity when they entered that contract. *See Global Innovative Concepts, LLC*, 105 F.4th at 143 (citations omitted); *Smith*, 289 N.C. at 320 (citations omitted). Therefore, "the doctrine of sovereign immunity will not be a defense to the State," *Smith*, 289 N.C. at 320 (citations omitted), and defendants "will occupy the same position as any other litigant," *Wray*, 370 N.C. at 48 (cleaned up). Accordingly, we affirm the trial court's order denying defendants' motion to dismiss as it relates to plaintiff's breach of contract claim.

But, because "[t]his Court has consistently held that we are not to consider the

merits of a claim when addressing the applicability of sovereign immunity as a potential defense to liability[,]" we are unable to reach plaintiff's alternative claim for promissory estoppel at this stage in the proceedings. *See Can Am S., LLC*, 234 N.C. App. at 127 (citing *Archer v. Rockingham Cnty.*, 144 N.C. App. 550, 558 (2001)); *see also Lannan*, 285 N.C. App. at 599 (stating our precedent directs this Court to "not express any opinion on that merits question at this stage; we only decide [if] Plaintiffs have validly pled a contract sufficient to waive sovereign immunity."); *Wray*, 370 N.C. at 50 (stating our precedent directs this Court to "express no opinion on the merits of plaintiff's contract action[.]").

## B. Negligent Misrepresentation

But our Supreme Court articulated its decision in *Smith*—that sovereign immunity will not be a defense to the State where it has entered into a valid contract—"has no application to the doctrine of sovereign immunity as it relates to the State's liability for torts." 289 N.C. at 322.

> The State has absolute immunity in tort actions without regard to whether it is performing a governmental or proprietary function except insofar as it has consented to be sued or otherwise expressly waived its immunity. Claims for tort liability are allowed only by virtue of the express waiver of the State's immunity.

*Guthrie v. N.C. State Ports Auth.*, 307 N.C. 522, 534–35 (1983) (cleaned up). Therefore, in tort actions, "we continue to recognize no distinction between 'governmental' or 'proprietary' functions of the State as sovereign." *Id.*

"The State may be sued in tort only as authorized in the Tort Claims Act."

*Guthrie*, 307 N.C. at 535. This statute allows the Industrial Commission to

> award damages in claims based on the negligence of "any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority, under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina."

*Kawai Am. Corp.*, 152 N.C. App. at 166 (quoting N.C.G.S. § 143–291(a) (2001)). In other words, the Tort Claims Act "waives the sovereign immunity of the State with respect to suits brought as a result of negligent acts committed by its employees in the course of their employment." *Id.* (cleaned up).

Specifically, the Tort Claims Act provides "[t]he North Carolina Industrial Commission is . . . a court for the purpose of hearing and passing upon tort claims against . . . all . . . departments, institutions and agencies of the State." N.C.G.S. § 143-291(a) (2023). Therefore, the proper forum for such negligence-based claims is the Industrial Commission, not superior court. *Kawai Am. Corp.*, 152 N.C. App. at 166 (citation omitted). "Because an action in tort against the State and its departments, institutions, and agencies is within the exclusive and original jurisdiction of the Industrial Commission, a tort action against the State is not within the jurisdiction of the Superior Court." *Guthrie*, 307 N.C. at 539–40.

"The history of litigation under the . . . Tort Claims Act clearly indicates that it was intended to address traditional kinds of negligence claims," with our Supreme

Court and this Court, "having routinely considered cases involving traditional negligence-based torts under the rubric of the . . . Tort Claims Act." *Cedarbrook Residential Ctr., Inc. v. N.C. Dep't of Health & Hum. Servs.*, 383 N.C. 31, 49 (2022). Our appellate courts have heard Tort Claims Act appeals from the Industrial Commission alleging various negligence-based claims like gross negligence, negligent infliction of emotional distress, and negligent misrepresentation. *See e.g. Chastain v. Arndt*, 253 N.C. App. 8, 8–14 (2017) (allegations of sovereign immunity waiver had "no bearing on the exclusive jurisdiction of the Industrial Commission to adjudicate Plaintiff's" negligence, gross negligence, and negligent infliction of emotional distress claims.); *Raritan River Steel Co. v. Cherry, Bekaert & Holland, Gen. P'ship*, 322 N.C. 200, 206 (1998) (negligent misrepresentation is a tort that specifically "occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care."). But we have clarified neither the Tort Claims Act nor any other statute waives sovereign immunity for intentional torts. *See Kawai Am. Corp.*, 152 N.C. App. at 167.

Since the Tort Claims Act "waives the sovereign immunity of the State with respect to suits brought as a result of negligent acts committed by its employees in the course of their employment[,]" plaintiff's negligent misrepresentation claim is subject to the Tort Claims Act. *Kawai America Corp.*, 152 N.C. App at 166. Therefore, plaintiff's negligent misrepresentation claim was brought in the wrong forum and "could only be pursued in the Industrial Commission but not in superior

court."[2] *Id.* at 167. Because plaintiff did not bring its claim in the proper forum, the trial court erred in denying defendants' motion to dismiss plaintiff's negligent misrepresentation claim. Accordingly, we reverse the trial court's order denying defendants' motion to dismiss as it relates to plaintiff's negligent misrepresentation claim.

## VI. Conclusion

The trial court did not err in denying defendants' motion to dismiss plaintiff's breach of contract claim because defendants waived sovereign immunity when they entered into a valid contract. However, the trial court lacked jurisdiction over plaintiff's negligent misrepresentation claim and therefore erred in denying defendants' motion to dismiss that claim. Accordingly, we affirm in part and reverse in part.

AFFIRMED IN PART AND REVERSED IN PART.

Chief Judge DILLON and Judge HAMPSON concur.

Report per Rule 30(e).

---

[2] Plaintiff's argument primarily relies upon the distinction between governmental and proprietary actions. Specifically, plaintiff argues "[t]he trial court properly found it had jurisdiction over [p]laintiff's negligent misrepresentation claim because during the contract negotiation and contracting period, the [d]efendants were not engaged in any governmental function[,]" but were rather engaged in a "private, proprietary real estate transaction[,]" However, in tort actions, "we continue to recognize no distinction between 'governmental' or 'proprietary' functions of the State as sovereign." *Guthrie*, 307 N.C. at 534–35 (1983) (cleaned up).